**UNITED STATES of America**

v.

**Kenneth RAMOS a/k/a Clarence Morris, Appellant.**

**No. 90–3240.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 13, 1992.

Decided April 14, 1992.

---

Michael A. Vatis, with whom Michael R. Bromwich, Washington, D.C. (appointed by the Court), was on the brief, for appellant.

Eric L. Yaffe, Asst. U.S. Atty., Washington, D.C., for appellee. Jay B. Stephens, U.S. Atty., John R. Fisher, Roy W. McLeese, III, and William M. Blier, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee. Elizabeth Trosman, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before RUTH BADER GINSBURG, BUCKLEY, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

The appellant, a passenger on an intercity bus, was arrested after a search of the crevice between his and the adjacent seat revealed drug paraphernalia and the resulting search of his person uncovered cocaine base. When the district court denied his motion to suppress the drug evidence, he entered a conditional plea of guilty to a drug distribution offense and appealed. We conclude that appellant had no reasonable expectation of privacy in the interior of the bus and, accordingly, we affirm the decision of the district court.

## I. BACKGROUND

Detective William Buss watched as Kenneth Ramos and another man stepped off a bus at the Greyhound terminal in Washington, D.C. Ramos, carrying what appeared to be a small black cloth bag, gave his companion something—money for fast food, he later testified—and then returned to the bus, while the other man walked into the terminal. Intrigued, Detective Buss boarded the bus parked next to the one that Ramos had reboarded, from which the officer could continue his surveillance.

Detective Vance Beard approached Ramos' companion as he was returning to the bus and identified himself as a police officer. The two then boarded the bus where the officer and his back-up, Detective John Brennan, asked the man some questions. Seeing that his companion had been stopped by the police, Ramos took a seat in the middle of the bus. From his vantage point in the adjacent bus, Detective Buss saw Ramos acting as if he were stuffing something between the seats. (Because of the height of the bus windows, Detective Buss could see only Ramos' upper arms, shoulders, and head.)

In order to discover what Ramos had tried to conceal, Detective Buss now boarded the bus in which Ramos was sitting. Supported by Detective Kimberly Oxendine, who took up a position at the back of the bus, and Detective Brennan, who was seated toward the front, Detective Buss approached Ramos, identified himself as a police officer, and asked Ramos if he would answer a few questions. Ramos, who at some point gave his name as Clarence Morris, agreed. When asked for his bus ticket, Ramos stood up, walked forward about three or four seats, and retrieved the black cloth object that Detective Buss had seen him carrying previously. Ramos pulled out a ticket, handed it to Detective Buss, and while the detective was looking at the ticket, sat down in a seat one row forward of where he had been sitting when Detective Buss approached him.

Detective Buss asked Ramos if he was carrying any drugs or guns; Ramos said

that he was not. Detective Buss then asked Ramos if he might frisk him; Ramos consented. Detective Buss then conducted a pat-down search and, after concluding that Ramos was not armed, went directly to the seats where he thought Ramos had stuffed something. There Detective Buss looked between the seat cushions, where he found a clear plastic bag containing more than thirty plastic vials of the type commonly used to package drugs for distribution.

Detective Buss held up the bag for Detective Brennan to see. Detective Brennan then approached Ramos and performed a nonconsensual pat-down search, which led to his discovery of another plastic bag, this one containing cocaine base, in one of Ramos' socks.

Ramos was indicted for possessing with the intent to distribute cocaine base. *See* 21 U.S.C. § 841(a) and (b)(1)(B)(iii). He moved to suppress the physical evidence on the ground that it was seized in violation of the fourth amendment. The district court, assuming *arguendo* that Ramos at some point had a reasonable expectation of privacy in the contents of the plastic bag containing the vials, determined that he had abandoned that bag when he stuffed it between the seats. *See United States v. Morris*, 738 F.Supp. 20, 23 (D.D.C.1990). Reasoning that Ramos had no reasonable expectation of privacy in property that he had abandoned, the district court denied his motion.

## II. ANALYSIS

Ramos insists that when he "stowed the bag containing empty vials in the crevice between the seats, he clearly possessed a reasonable expectation of privacy in that bag ...," just as he would were he instead travelling with "a valise or a suitcase." He thus proceeds from the premise that the fourth amendment applies, to the conclusion that the district court erred as a matter of law in holding that he abandoned his bag. Along the way he argues that (1) a passenger customarily feels free to move around a bus cabin secure in the expectation that items left in the area of his seat

remain private, (2) he never relinquished effective control over the crevice in which he left the bag, and (3) if he did temporarily relinquish such control, it was only because he left his seat at the request of the police, who should not be able to exploit his cooperation beyond the point to which he agreed.

Ramos understandably skirts two key facts. First, the plastic bag was transparent. Second, he hid the bag in the passenger area of a commercial bus. Because Ramos' "luggage" was transparent, he could have no expectation of privacy in the bag itself. While "a traveler who carries a toothbrush and a few articles of clothing in a paper bag or knotted scarf [may] claim an equal right to conceal his possessions from official inspection as the sophisticated executive with the locked attache case," the fourth amendment provides protection to the owner of only a "container that conceals its contents from plain view." *United States v. Ross*, 456 U.S. 798, 822–23, 102 S.Ct. 2157, 2171–72, 72 L.Ed.2d 572 (1982); *accord Smith v. Ohio*, 494 U.S. 541, 110 S.Ct. 1288, 1289, 108 L.Ed.2d 464 (1990). Therefore, unless some attribute of the crevice into which Ramos stuffed the plastic bag made it reasonable for him to expect that it would remain private, he had no fourth amendment protection against the search that brought it to light.

Perhaps sensing the weakness of his premise that the fourth amendment applies to his interest in the bag, Ramos contends in the alternative that we should treat the crevice between the seats as the constitutional equivalent of an opaque container. That this "container" is a fixture in a public conveyance does not diminish the user's expectation of privacy, the argument goes; rather, like the telephone booth in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the seats demarcate an area in which an occupant may reasonably expect fourth amendment protection.

This argument does not establish a fourth amendment interest under either of the standards applied by the Supreme Court. "Legitimation of expectations of

privacy by law," the Court has said, "must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas v. Illinois*, 439 U.S. 128, 143 n. 12, 99 S.Ct. 421, 430 n. 12, 58 L.Ed.2d 387 (1978). A passenger on a commercial bus certainly has no property interest in the crevice between the seats or for that matter in the rack above the seats, the area beneath the seats, or anywhere else that personal effects may be stowed. Nor are we aware of any socially recognized expectation of privacy in the interior of a bus.

The Supreme Court has consistently affirmed that a traveler on a public thoroughfare has a lesser privacy interest than does the occupant of a fixed dwelling. *See, e.g., United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *see also United States v. Colyer*, 878 F.2d 469, 476 (D.C.Cir.1989). In particular, we note that passengers on a commercial bus come and go with every stop, may move freely about the vehicle while on board, and are at liberty to stow their personal articles wherever space permits. *Cf. United States v. Lyons*, 706 F.2d 321, 326 (D.C.Cir.1983) (sharing common areas "inevitably mute[s] some of each [hotel] guest's legitimate expectations [of privacy]"); *United States v. Robinson*, 698 F.2d 448, 454 (D.C.Cir.1983) ("evidence that people freely came and went from the premises certainly cuts against the normal expectations of privacy"); *United States v. Alewelt*, 532 F.2d 1165, 1168 (7th Cir.1976) (no reasonable expectation of privacy in a coat hanging on a public coat rack). Of course, a bus passenger might maintain physical control over property stowed in close proximity to his person if he is quick to intercede in order to prevent another from disturbing it; but that he might well have to assert himself in order to ward off others only highlights the lack of any societal understanding that he may expect privacy in such a place.

### III. CONCLUSION

The appellant could not reasonably expect privacy in a clear plastic bag merely because he put it out of sight in a recess in the interior of a public bus. Therefore the decision of the district court denying Ramos' motion to suppress evidence seized from such a place is

*Affirmed.*