**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Antonio GUZMAN, Defendant–Appellant.**

No. 95–5657.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 5, 1996.

Decided Feb. 21, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied April 8, 1996.

Victor L. Ivy (argued and briefed), Memphis, TN, for plaintiff-appellee.

K. Jayaraman (argued and briefed), Memphis, TN, for defendant-appellant.

Before: ENGEL and MILBURN, Circuit Judges; WEBER, District Judge.*

* The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

MILBURN, Circuit Judge.

Defendant appeals the district court's denial of his motion to suppress evidence seized in connection with his conviction for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). On appeal, the issues are (1) whether the district court erred in finding that a police officer's initial touch of defendant's bag in the overhead luggage compartment of a bus was not a warrantless search, (2) whether the district court erred in finding that the totality of the circumstances established the probable cause necessary to remove defendant and his bag from the bus, and (3) whether the district court erred in holding that certain government witnesses were credible. For the reasons that follow, we affirm.

## I.

### A.

On March 24, 1994, defendant Antonio Guzman arrived at the Greyhound bus station in Memphis, Tennessee, at approximately 5:00 a.m. He was travelling on a bus from Dallas, Texas. Memphis Police Detectives Joe Hoing and Mary Johnson were at the bus station with their drug dogs at this time to check for drugs on the early arriving buses.

When defendant's bus arrived, Officers Hoing and Johnson worked their dogs on the side of the bus from which the passengers exited. Hoing checked the baggage compartments underneath the bus, while Johnson worked her drug dog on luggage that the passengers carried with them off the bus. Johnson was positioned about twenty feet from Hoing, and her procedure was to ask for the passenger's consent and then allow her dog to sniff the luggage.

When defendant Guzman exited the bus, he carried a blue cloth bag. Officer Johnson asked for his consent to have her dog sniff his luggage, and Guzman put his bag down for Johnson's dog to sniff. The drug dogs are trained to become excited and then to sit when they detect the presence of drugs.

Johnson testified that her dog showed interest in Guzman's bag but that it did not sit down. She stated that the dog "was sniffing real hard trying to put her face down in the bag more." J.A. 292. Johnson further testified that she intended to detail the dog on the bottom of the bag, but Guzman picked up the bag and left before she could. Guzman contends that Johnson indicated he could leave by saying "thank you," and Johnson testified this could have been possible. J.A. 322–23. Subsequently, Johnson told Hoing that her dog Casey had shown an interest in defendant's bag.

After all the passengers exited the bus, Johnson and Hoing entered the empty bus. At that point, Guzman returned to the bus to get some weights he had left beneath his seat. Using a drug dog, the officers located a bag in the back of the bus that later proved to contain marijuana. This bag was unrelated to defendant Guzman. They left that bag on the bus, intending to reboard the bus later to determine its owner.

After all the passengers reboarded the bus, Hoing and Johnson boarded the bus, announcing that they wanted to determine the ownership of some of the bags. Hoing began at the front of the bus and inquired as to the ownership of several bags in the overhead rack of the bus. The overhead rack is an unenclosed shelf that runs the entire length of the bus. It is two feet deep with elastic ropes over the front of it. When Hoing came to Guzman's bag, he placed his hand on it and asked to whom it belonged. Hoing testified that, when he touched the bag, he felt several hard bricks inside and immediately thought the bricks were drugs.

Guzman said that the bag was his, and Hoing testified that he asked defendant Guzman if he could look inside. Hoing said that defendant consented and that he then took the bag down from the shelf. He placed it in the empty seat next to Guzman and loosened the drawstring on top. At this point, Guzman told Hoing that he needed a "piece of paper" to look inside the bag, and Hoing took that to mean that he needed a search warrant.

Officer Hoing stopped the search and asked defendant Guzman to step off the bus.

Hoing took Guzman's bag off the bus, and Guzman consented to having the drug dogs sniff his bag. Both dogs independently gave a positive alert for the presence of drugs. At some point, Hoing and Johnson had called Officer Walford Covington, a uniformed member of the Memphis Police, to the scene. Covington advised Guzman of his constitutional rights, handcuffed him, and placed him in a squad car. He was transferred to the Organized Crime Unit Office and detained while the officers obtained a search warrant. The execution of the search warrant was videotaped and more than six thousand grams of cocaine, wrapped in six bundles, were found in the bag. The bag in which the drugs were found was cylindrical in shape and measured eleven inches in width. The bundles of drugs were stacked on top of each other on the bottom of the bag with food, cassette tapes, a magazine and "religious figurines" on top of and around the bundles. Each bundle of cocaine was surrounded by axle grease and wrapped tightly with duct tape in the form of a "brick."

**B.**

On April 18, 1994, defendant Guzman was indicted by the grand jury for the Western District of Tennessee. He was charged with one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). On May 25, 1994, defendant filed a motion to suppress the evidence seized in the case, and the motion was referred to a magistrate judge. On June 14 and 15, 1994, the magistrate judge conducted an evidentiary hearing on the motion, and on August 26, 1994, he filed a report recommending that the motion be granted. He found that Officer Hoing's touch of defendant's bag was a search of the bag that would require probable cause. He concluded that Hoing did not have probable cause to touch defendant Guzman's bag, and, therefore, the touch of the bag was an unlawful search. He further held that defendant's subsequent detention was an unlawful arrest and that the evidence should be suppressed under the doctrine of *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

On September 9, 1994, the government filed objections to the magistrate's report, and on September 28 and 29, 1994, the district court conducted a hearing on the matter. Subsequently, it denied the motion to suppress on February 2, 1995. It concluded:

> (1) that Officer Hoing's initial touch of defendant's bag was not a warrantless search in violation of the Fourth Amendment because defendant had no reasonable expectation of privacy in the bag placed in the overhead luggage rack; and (2) that under the totality of the circumstances presented on May 24, 1994, the officers had probable cause at the time they removed defendant and his luggage from the Greyhound bus.

J.A. 167.

On the same day, defendant entered a guilty plea, reserving his right to appeal the denial of his motion to suppress pursuant to Federal Rule of Criminal Procedure ("Fed. R.Crim.P.") 11(a)(2). On April 27, 1995, defendant was sentenced to 108 months of imprisonment followed by five years of supervised release. This timely appeal followed.

## II.

Defendant appeals the district court's denial of his motion to suppress the evidence seized in connection with his conviction for possession with intent to distribute cocaine. He alleges three grounds on which the district court erred. First, defendant argues that the district court erred in holding that he had no legitimate expectation of privacy in his bag on the luggage rack. Second, defendant argues that the district court erred in holding that the totality of the circumstances established probable cause to arrest defendant at the time Officer Hoing escorted him from the bus. Third, defendant argues that the district court erred in finding that the testimony of certain government witnesses was credible.

 When reviewing the ruling of a district court on a motion to suppress evidence, we apply a clearly erroneous standard to its findings of fact and conduct a de novo review of its legal conclusions. *United States v. Roberts,* 986 F.2d 1026, 1029 (6th Cir.) (citing

*United States v. Hughes,* 898 F.2d 63, 64 (6th Cir.1990); *United States v. Sangineto–Miranda,* 859 F.2d 1501, 1512 (6th Cir.1988)), *cert. denied,* —— U.S. ——, 114 S.Ct. 271, 126 L.Ed.2d 222 (1993). A decision is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948).

### A.

 First, we address defendant's argument that the district court erred in finding that Officer Hoing's touch of the bag in the luggage rack did not constitute a search of the bag for purposes of the Fourth Amendment. The Fourth Amendment to the Constitution of the United States provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause...." U.S. Const. amend. IV. The Fourth Amendment protects against warrantless intrusions where an individual has a "legitimate expectation of privacy." *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978) (citing *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967)). Therefore, our first consideration is whether defendant had a legitimate and reasonable expectation of privacy in the exterior of his luggage when he placed it in a public overhead compartment on a Greyhound bus.

A number of cases have held that a passenger on a common carrier has no reasonable expectation of privacy in the exterior of his luggage or the airspace surrounding it. As the Eighth Circuit stated in *United States v. Harvey,* 961 F.2d 1361 (8th Cir.) (per curiam), *cert. denied,* 506 U.S. 883, 113 S.Ct. 238, 121 L.Ed.2d 173 (1992):

> Passengers have no objective, reasonable expectation that their baggage will never be moved once placed in an overhead compartment. It is not uncommon for the bus driver or a fellow passenger to rearrange the baggage in the overhead compartment

or to temporarily remove the baggage and place it in a seat or in the aisle in order to rearrange and maximize the use of limited compartment space.

*Id.* at 1364. *See also United States v. Lovell,* 849 F.2d 910, 915 (5th Cir.1988) (holding that removal of defendant's suitcases from airline conveyer belt and subsequent compression and smelling of bags was not search based on facts that "agents' actions ... occurred in a semi-public baggage area in the airport after [defendant] entrusted the handling of his bags to a common carrier" and that defendant "had no reasonable expectation that his luggage would not be moved or handled"); *United States v. Rem,* 984 F.2d 806, 812 (7th Cir.) ("Furthermore, it is generally recognized that the privacy interests of people who are in transit on 'public thoroughfares are substantially less than those that attach to fixed dwellings.'") (citations omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993); *United States v. Ramos,* 960 F.2d 1065, 1068 (D.C.Cir.1992) ("A passenger on a commercial bus certainly has no property interest in the crevice between the seats or for that matter in the rack above the seats, the area beneath the seats, or anywhere else that personal effects may be stowed. Nor are we aware of any socially recognized expectation of privacy in the interior of a bus.").

In *Harvey,* police detectives boarded a bus with their drug dog to search for narcotics. While walking down the aisle, the dog lifted his head in the air to sniff, an action that the agents believed indicated the presence of drugs in the overhead compartment. They removed some of the bags from the compartment in order to allow the dog to sniff them more closely. The court concluded that their moving the baggage was not a search requiring probable cause. *Harvey,* 961 F.2d at 1364.

Defendant attempts to distinguish *Harvey,* arguing that "based on the 'alert' of the dog ... the detective [in *Harvey* ] clearly had reasonable suspicion to conclude that narcotics were located somewhere in its overhead compartment," while in this case "Officer Hoing did not have this reasonable suspicion when he touched the bag." Brief of Defen-

dant at 25–26. However, the district court correctly concluded that defendant's argument is misplaced. "[I]f the defendant had no reasonable expectation of privacy in his bag to begin with, then the officer's touch of defendant's bag was not a search or seizure under the Fourth Amendment regardless of whether the officer had reasonable suspicion or no suspicion when he touched the bag." J.A. 170.

Defendant relies heavily on *United States v. Most,* 876 F.2d 191 (D.C.Cir.1989); however, we find the facts in *Most* to be clearly distinguishable from the facts in this case. In *Most,* the defendant, who was being observed by three police officers and who had aroused the suspicions of the officers, entered a grocery store carrying a plastic bag. The store's policy required customers to check their bags while they shopped, so the defendant asked a store clerk if she would watch his bag. The clerk placed the bag on the floor underneath the checkout counter. When the defendant finished his shopping, he did not retrieve the bag that he had checked, but instead asked the clerk if she would continue to watch the bag for him.

The officers became suspicious when the defendant did not leave the store with the bag that he had carried when he entered, and they went into the store to determine what had happened to the bag. One of the officers saw the bag under the counter, questioned the clerks and manager about the bag, and then inspected the bag more closely by attempting to look in the top of the bag and by feeling the bottom of the bag using the "crush technique." Feeling what he thought was crack cocaine, the officer opened the bag and then arrested the defendant.

The District of Columbia Circuit held that the evidence obtained by the officers was inadmissible because the "initial touching of [the defendant]'s bag was itself a warrantless search which required its own justification." *Id.* at 195. Defendant argues that the facts in *Most* are similar to this case and that *Most* leads to the conclusion that he had a legitimate expectation of privacy in his bag. We conclude, however, that the circumstances under which Officer Hoing initially touched defendant's bag are distinguishable

from those in *Most.* In *Most,* the defendant entrusted his bag to a store clerk which resulted in a legitimate expectation of privacy. As the court noted: "Most ... did not place his bag within the reach of the world generally. Instead, he entrusted his belongings to the professional supervision of the cashiers with the clear understanding that they would protect the property from intrusion by the public." *Id.* at 197.

■ Conversely, defendant Guzman placed his bag on the overhead storage rack of a commercial bus where he should have known that it would be accessible to others in the normal flow of traffic on the bus. We find that there is a meaningful distinction between an individual's privacy interest in the interior and the exterior of his luggage. While a passenger on a common carrier has a reasonable expectation that the contents of his luggage will not be exposed absent consent or a search warrant, we join the Eighth Circuit and hold that this expectation of privacy does not extend to the exterior of or airspace surrounding the luggage. *See United States v. McDonald,* 855 F.Supp. 267, 269 (S.D.Ind.1994) (citing *United States v. Daniel,* 982 F.2d 146, 150–51 (5th Cir.1993) (per curiam)).

Furthermore, we note that it would not have been impossible for defendant Guzman to prevent Officer Hoing from touching his bag. He simply would have been required to take action to intervene as he saw Hoing making his way down the aisle. As the District of Columbia Circuit stated in *Ramos:*

> In particular, we note that passengers on a commercial bus come and go with every stop, may move freely about the vehicle while on board, and are at liberty to stow their personal articles wherever space permits. Of course, a bus passenger might maintain physical control over property stowed in close proximity to his person if he is quick to intercede in order to prevent another from disturbing it; but that he might well have to assert himself in order to ward off others only highlights the lack of any societal understanding that he may expect privacy in such a place.

960 F.2d at 1068 (citations omitted). Because we conclude that defendant had no reasonable expectation of privacy in the exterior of his bag when it was on the open luggage rack of a commercial bus, we hold that Hoing's initial touch of the exterior of defendant's bag was not an unreasonable search in violation of the Fourth Amendment.

**B.**

■ Next, we address defendant's argument that the district court's holding that under the totality of the circumstances the police had probable cause to detain Guzman when they escorted him off the bus is in error. First, defendant argues that the government did not raise its "totality of the circumstances" argument before the magistrate or in its objections to the magistrate's report filed with the district court. Therefore, defendant asserts that the government has waived this argument and that we should not consider it. We find, however, that the government made this argument both before the magistrate and the district court. J.A. 66, 109. Defendant's contention that this argument has been waived is wholly without merit.

■ Second, defendant argues that the district court erred in holding that Officer Hoing's touch of defendant's bag along with the interest that Officer Johnson's dog showed in defendant's bag were sufficient to create the probable cause necessary to remove defendant and his bag from the bus. We agree with the district court that defendant Guzman was seized for purposes of the Fourth Amendment at the time he was removed from the bus. In *United States v. Macklin,* 900 F.2d 948 (6th Cir.), *cert. denied,* 498 U.S. 840, 111 S.Ct. 116, 112 L.Ed.2d 86 (1990), we said that "[w]hether a person is in custody depends upon 'how a reasonable man in the suspect's position would have understood his situation.'" *Id.* at 951 (quoting *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984)). It is clear that someone in defendant Guzman's position who had withdrawn consent to a search and been asked to step off the bus would not feel free at that point to walk away. Furthermore, Officer Hoing acknowledged on cross-exami-

nation that defendant Guzman was not free to leave when he was asked to exit the bus. J.A. 285.

Therefore, because the officer's removal of Guzman was a seizure, we must determine whether Officer Hoing had probable cause to remove Guzman and his bag from the bus. The district court found that Officer Hoing had probable cause to remove defendant Guzman based on two factors: (1) the interest of Officer Johnson's dog in defendant's bag and her statement to Officer Hoing regarding this interest and (2) Officer Hoing's touch of the bag and his recognition of the bricks as bundles of drugs based upon his experience as a law enforcement officer. As the District of Columbia Circuit noted in *United States v. Prandy–Binett,* 995 F.2d 1069 (D.C.Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1196, 127 L.Ed.2d 545 (1994), "[s]omewhere between ' "less than evidence which would justify ..." conviction' and 'more than bare suspicion,' probable cause is satisfied." *Id.* at 1070 (quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949) (citation omitted)). " '[P]robable cause' is evaluated not only from the perspective of a 'prudent man,' but also from the particular viewpoint of the officer involved in the search or seizure. Law enforcement officers naturally reach conclusions based on their training and experience. In cases of searches or seizures without warrants, the court's role is to decide whether the officer's inference from the facts was 'reasonable.' " *Id.* at 1071 (citations omitted).

■ Defendant contends that the totality of the circumstances was insufficient to create probable cause for two reasons. First, he argues that Officer Hoing could not have felt the bricks of cocaine when he touched the bag. He asserts that, because the bundles of drugs were stacked on top of each other on the bottom of the bag with food, cassette tapes, and other items surrounding them, Hoing could not "feel the bundles inside defendant's bag by just touching it as he claimed." Brief of Defendant at 37. However, the district court found "that Officer Hoing was a creditable [sic] witness and that, in fact, he did immediately recog-

nize the large brick-like objects to be drugs at the time he touched defendant's duffle bag." J.A. 172 n. 8. The district court further stated that it "felt the bag with its contents and that examination fully supported Officer Hoing's testimony and the Court's observation, that the contents of the bag (bricks of drugs) were immediately apparent—particularly to an experienced law enforcement officer such as Officer Hoing." *Id.* We review findings of fact by the district court for clear error, and where, as here, the findings rest on credibility determinations, even greater deference is required. *United States Dep't of Labor v. Cole Enters., Inc.,* 62 F.3d 775, 778 (6th Cir.1995). We find no reason to disregard the district court's determination that Officer Hoing immediately recognized the bricks to be drugs when he touched the bag, especially in light of the fact that Officer Hoing has been a police officer for more than twenty years and has handled hundreds of bundles of drugs.

■ Second, defendant Guzman argues that "[a]ny claim that [Officer Hoing] had suspicion because of the alleged excitement showed [sic] by the drug dog while sniffing the defendant's bag the first time is likewise invalid ... because there is no legal standard for a *dog's 'suspicion'* short of a positive alert, which admittedly the dog did not give on that first sniff." Brief of Defendant at 38. While we acknowledge that the dog's "interest" in the bag alone would not constitute probable cause, *see United States v. Jacobs,* 986 F.2d 1231, 1235 (8th Cir.1993), we do not find that this fact precludes us from considering Officer Hoing's awareness of the dog's interest in defendant Guzman's bag when determining whether the totality of the circumstances established probable cause to seize defendant Guzman. Therefore, in light of the totality of the circumstances, we conclude that the district court's finding that the officer had probable cause to seize defendant and his bag was not clearly erroneous.

### C.

Finally, defendant argues that the district court erred in finding that the testimony of Hoing, Johnson, and Covington before the district court did not materially vary from

the testimony they gave at the suppression hearing before the magistrate. We concluded above that the district court's determination regarding Officer Hoing's credibility was not erroneous, and we further conclude that this credibility determination is the only one on which the district court relied. We therefore find it unnecessary to address the other inconsistencies that defendant alleges exist.

### III.

For the reasons stated, the district court's denial of defendant's motion to suppress is **AFFIRMED**.