89 F.3d 837
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Henry P. SMITH, Defendant-Appellant.
 No. 95-5914.
 United States Court of Appeals, Sixth Circuit.
 April 25, 1996.
 
 Before: KENNEDY and COLE, Circuit Judges; COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Henry P. Smith appeals from an order of the District Court denying his motion to suppress evidence obtained as a result of an allegedly unlawful arrest. For the following reasons, we AFFIRM.
 
 I.
 
 2
 Defendant Henry P. Smith entered a conditional plea of guilty to one count of aiding and abetting the possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. According to testimony taken at two suppression hearings,[1] the following events led to defendant's arrest and indictment:
 
 
 3
 At approximately 4:00 p.m. on November 15, 1992, three squad cars from the Memphis Police Department were on patrol in the area of Patton and Essex Streets in Memphis, Tennessee. Officers observed a group of approximately ten men standing on the sidewalk in front of 1600 Patton Street, where defendant lived. An officer saw that one of the men had an Uzi-type machine gun in his hand, and the squad cars turned onto Patton from Essex to investigate. Upon seeing the police cars, the individual with the gun dropped a plastic bag with white contents later identified to be crack cocaine. He then turned and ran away from the police. Another individual picked up the bag and stuffed it down the front of his pants.
 
 
 4
 By this time all three squad cars had turned down Patton Street. The two officers in the first squad car apprehended the armed, fleeing suspect. An officer from the third car arrested the individual who picked up the plastic bag that contained cocaine. The driver of the second squad car, Officer Curry, and a second officer from the third car detained defendant.
 
 
 5
 Officer Curry was looking for fleeing suspects when he first saw defendant in the driveway of 1600 Patton. Defendant was next to a car that was jacked-up approximately two and a half feet. Officer Curry testified that he focused his attention on defendant, who appeared to be attempting to conceal something between his body and his arm. The officer further testified that by looking underneath the jacked-up car, he observed defendant duck down behind the raised car and furtively pull an object out from between his body and his arm and place it underneath a mat that was next to the car.
 
 
 6
 Fearing that defendant might have a gun, Officer Curry left his squad car and notified another officer of what he had observed. Together, the two officers approached defendant, who was standing between that car and the house. They conducted a pat-down search of defendant and searched the area near where defendant was standing. Underneath the mat they found an object wrapped in brown paper. Upon examination, the object revealed itself to be a large glass beaker associated with the use of crack cocaine; it contained cocaine residue.
 
 
 7
 Officers arrested defendant and read him his "Miranda rights." Defendant indicated that he understood these rights and then gave an inculpatory, written statement of admission. Defendant filed a motion to suppress this statement and the beaker on the grounds that they constituted the fruits of an arrest made without probable cause.
 
 
 8
 The District Court referred this motion to a magistrate judge who reviewed transcripts of the suppression hearings in the first prosecution and recommended that the motion be granted. The District Court reviewed the same transcripts, rejected the magistrate judge's recommendation, and held that since there was probable cause to arrest defendant, the evidence could properly be admitted.
 
 
 9
 Defendant now appeals, arguing that the officers did not have probable cause to arrest him. He claims that he was working as a mechanic underneath the jacked-up car and was arrested solely because he was in the general vicinity of criminal activity. In support of his version, he cites the testimony of two witness who testified at the supplemental hearing, each of whom indicated that officers pulled defendant out from under the car and arrested him.
 
 II.
 
 10
 When reviewing a district court's denial of a motion to suppress evidence, we conduct a de novo review of its legal conclusions and apply a clearly erroneous standard to its findings of fact. United States v. Guzman, 75 F.3d 1090, 1093 (6th Cir.1996) (citations omitted). Further, where, as here, factual findings rest in large part on credibility determinations, we afford district courts even greater deference. Id. at 1096. Finally, a district court's denial of the motion to suppress will be affirmed on appeal if proper for any reason, even one not relied upon by that court. United States v. Garza, 10 F.3d 1241, 1245 (6th Cir.1993).
 
 
 11
 The Supreme Court's Fourth Amendment jurisprudence since Terry v. Ohio, 392 U.S. 1 (1968), has sought to balance individuals' Fourth Amendment rights with the immediate interests of the police in protecting themselves from the dangers posed by hidden weapons. See, e.g., Maryland v. Buie, 494 U.S. 325, 332-33 (1990). Toward that end, the Supreme Court has made clear that when a police officer " 'is justified in believing that [an] individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' he may conduct a limited protective search for concealed weapons." Adams v. Williams, 407 U.S. 143, 146 (1972) (quoting Terry, 392 U.S. at 24).
 
 
 12
 Further, in Michigan v. Long, 463 U.S. 1032, 1047 (1983), the Court expressly rejected the contention that Terry restricted protective searches to the person of the detained suspect. The Long Court stated that a search "limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Id. at 1049-50 (quoting Terry, 392 U.S. at 21).
 
 
 13
 Applying these Fourth Amendment principles to the case at bar, we must decide 1) whether Officer Curry possessed a reasonable belief based on specific and articulable facts, and the rational inferences that flow therefrom, that defendant was armed and dangerous or could have gained immediate control of a weapon; and 2) whether the scope of the search was limited to an area where a weapon could have been placed or hidden. Giving due deference to the factual findings and credibility determinations of the District Court, we answer both inquiries in the affirmative.
 
 
 14
 At a March 24, 1993 suppression hearing, officers testified that defendant was observed in the immediate area of obvious criminal conduct; that at least one other individual at the scene was armed; and that drugs were found on an individual at the scene. Specifically, Officer Curry testified that he observed defendant attempting to hide a small object between his arm and his body; that he observed defendant move furtively away from him and other officers; and that he observed defendant place the object underneath a mat on the ground close to the car. Officer Curry gave substantially the same testimony at the October 14, 1993 supplemental hearing.
 
 
 15
 Upon review of the transcripts and exhibits of the suppression hearings, the District Court explicitly credited the testimony of Officer Curry and discredited the witnesses who testified on behalf of the defendant. These witnesses were friends of defendant. More importantly, their testimony was in conflict with that of defendant who testified he was standing along side of the car when he spoke with officers while the witnesses said he was pulled out from under the car by the officers. Having reviewed the transcripts, and finding no error with the District Court's credibility determinations or factual findings, we conclude that Officer Curry's belief that defendant may have been armed was reasonable, and based on specific and articulable facts that justified a Terry-type pat-down search of defendant.
 
 
 16
 We also conclude that officers were justified in searching under the mat. Not only did Officer Curry directly observe the defendant place an object the size of a handgun underneath the mat, but the mat was within a few feet of defendant, and accessible to him. See Long, 463 U.S. at 1048 (expressly recognizing that "suspects may injure police officers and others by virtue of their access to weapons, even though they may not themselves be armed"). Further, the fact that officers unwrapped the beaker from brown paper did not constitutionally tarnish the search or seizure. See id. at 1049. The officers had a reasonable suspicion, based on articulable facts, that a handgun may have been within defendant's reach. Under these circumstances, the officers were not constitutionally barred from unwrapping the unidentified object in order to confirm that it was not a firearm.[2] Finally, given the discovery of the contraband under the mat and its connection to defendant, and taking into account the "totality of the circumstances," see Illinois v. Gates, 462 U.S. 213, 230-31 (1983); United States v. Bell, 762 F.2d 495, 499-502 (6th Cir.), cert. denied, 474 U.S. 853 (1985), there was probable cause to arrest defendant.
 
 III.
 
 17
 For the foregoing reasons, the decision of the District Court is hereby AFFIRMED.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 This case comes to us on the second indictment of defendant. The original indictment was dismissed without prejudice for violation of the Speedy Trial Act. In the earlier prosecution, defendant filed an identical motion to suppress. Two hearings were held on the motion, one before the original Magistrate Judge, and a supplemental hearing before the original District Judge. These hearings afforded both the government and defendant a full opportunity to call witnesses and put into evidence relevant exhibits. Therefore, upon defendant's reindictment, and the (re)filing of the instant motion, defendant and the government agreed that the transcripts from the previous hearings would provide the record for consideration of this case
 
 
 [2]
 We note that when, as here, officers find incriminating drug paraphernalia in the course of a legitimate search for weapons, it is well settled that the Fourth Amendment does not require its suppression. See Long, 463 U.S. at 1050