# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 12, 2010

Charles R. Fulbruge III
Clerk

No. 09-40779

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RICKY LEE CLAYTON,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas, Corpus Christi Division;
USDC No. 09CR219

Before JONES, Chief Judge, BENAVIDES, and PRADO, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Ricky Lee Clayton appeals the district court's denial of his motion to suppress evidence he claims was obtained in violation of his Fourth Amendment rights. Finding no error in the district court's denial of the Defendant-Appellant's motion to suppress, we AFFIRM.

I.    BACKGROUND

On February 28, 2009, at some time between 11:00 and 11:30 AM, Clayton arrived at the Sarita, Texas Border Patrol immigration checkpoint driving a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-40779

vacuum truck. Border Patrol Agent Reese Wade Osborne testified that Clayton stopped the vacuum truck in the primary inspection area near where Osborne and his service canine, Verzir, were standing. Verzir alerted to the vacuum truck almost immediately, within the first minute after Clayton's arrival at the checkpoint. Osborne testified that he watched as Verzir's "nose c[a]me up and jerk[ed] towards the center of th[e] truck." Osborne stated that Verzir then "pulled him towards the center of the tanker and began to alert."

Meanwhile, Border Patrol Agent Alan Garcia proceeded to question Clayton in the primary inspection area. Garcia approached Clayton and asked him whether he was a U.S. citizen, to which he replied: "uh-huh." Garcia testified that Clayton seemed tense, his eyes were wide, and that he was murmuring. While Garcia was questioning Clayton, Osborne informed Garcia that Verzir had alerted to Clayton's vehicle. Garcia then asked Clayton whether he could take a closer look at Clayton's vehicle. Clayton replied, "I guess." Garcia then directed Clayton to the secondary inspection area. This initial encounter took approximately forty-five seconds to one and a half minutes.

The subsequent search of the vacuum truck led to the discovery of approximately 822.28 kilograms of marijuana. Clayton was arrested and ultimately charged in a one-count indictment for possessing with the intent to distribute 822.28 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Clayton filed a motion to suppress, asking the district court to suppress "all evidence, observations, and statements" on the basis that the search of his vehicle was "unsupported by either reasonable suspicion or probable cause."

No. 09-40779

On April 28, 2009, the district court conducted a hearing on the motion, denying the motion from the bench.  On May 4, 2009, the district court entered an order detailing its reasons for denying Clayton's motion.  Clayton then entered a plea of not guilty, and the case proceeded to a jury trial.  After the jury returned a guilty verdict, the district court sentenced Clayton on July 24, 2009.  The district court filed its judgment and statement of reasons on July 27, 2009, and Clayton timely filed his notice of appeal on August 3, 2009.

On appeal, Clayton argues that the district court's factual finding that the canine dog "alerted" to his vehicle is clearly erroneous, and consequently, that the Border Patrol Agents did not have probable cause to search his vehicle.  Furthermore, Clayton argues that his statement "I guess" did not constitute voluntary consent, and as a result, the Border Patrol Agents did not have consent to search his vehicle.  With no probable cause or consent for the Agents' search of his vehicle, Clayton asks this Court to reverse the district court's denial of his motion and suppress any and all evidence obtained from what he claims was an unconstitutional search and seizure.

II.    STANDARD OF REVIEW

"In reviewing a district court's denial of a defendant's motion to suppress, this court reviews factual findings . . . for clear error, while we review legal conclusions *de novo.*" *United States v. Rangel-Portillo*, 586 F.3d 376, 379 (5th Cir. 2009) (quotation marks and citation omitted).  Thus, "[a]ppellate review of a district court's ruling on a motion to suppress based on testimony at a suppression hearing is subject to the clearly erroneous standard." *United States v. Cooper*, 43 F.3d 140, 144 (5th Cir. 1995); *see also United States v. Alvarez*, 6 F.3d 287, 289 (5th Cir. 1993) ("This Circuit's standard of review for a motion to

No. 09-40779

suppress based on live testimony at a suppression hearing is to accept the trial court's factual findings unless clearly erroneous or influenced by an incorrect view of the law."). Furthermore, when reviewing the district court's factual findings under the clearly erroneous standard, we "vie[w] the evidence in the light most favorable to the government." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005). The Court "may affirm the district court's decision on any basis established by the record." *United States v. Charles*, 469 F.3d 402, 405 (5th Cir. 2006).

## III.  ANALYSIS

On appeal, Clayton asserts that the district court committed clear error when it considered the live testimony at the hearing and concluded that the canine dog had in fact "alerted" to Clayton's vehicle. Having reviewed the record and the district court's decision under the clearly erroneous standard, we conclude that this factual finding is supported by the record and, therefore, does not constitute clear error. Furthermore, since the canine's alert itself established sufficient probable cause to justify the agents' search of the vehicle, we find the district court did not err when it denied Clayton's motion to suppress.[1] For the reasons articulated in greater detail herein, we affirm the district court's denial of the Defendant-Appellant's motion to suppress.

---

[1] Because the canine sniff of Defendant-Appellant's vehicle establishes probable cause for the Agents' search of the vehicle, this Court need not address the Defendant-Appellant's additional issue raised on appeal: his contention that his statement "I guess" did not constitute voluntary consent. *See United States v. Marchuca-Barrera*, 261 F.3d 425, 431 (5th Cir. 2001) (holding that Border Patrol Agents can justify their "further detention" of a vehicle at an immigration checkpoint "based on consent **or** probable cause.") (emphasis added); *see also United States v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995) ("The fact that the dog alerted provided probable cause to search."). Thus, the existence of probable cause in this instance precludes the necessity of our determining whether Clayton gave his consent. In this particular instance, Clayton's consent was not constitutionally necessary.

No. 09-40779

"The Fourth Amendment declares the right to be secure against unreasonable searches." *Waldrop*, 404 F.3d at 368 (quotation marks, brackets, and citation omitted). "It is agreed that checkpoint stops are 'seizures' within the meaning of the Fourth Amendment." *United States v. Martinez-Fuerte*, 428 U.S. 543, 556 (1976). The Fourth Amendment, however, does not prohibit *all* searches and seizures, but rather, only those that constitute an unreasonable or arbitrary use of the government's police power. *See Martinez-Fuerte*, 428 U.S. at 554 (holding that the Fourth Amendment only "imposes limits on search-and-seizure powers in order to prevent arbitrary and oppressive interference by enforcement officials. . . ."). "In delineating the constitutional safeguards applicable in particular contexts, the Court has weighed the public interest against the Fourth Amendment interest of the individual, a process evident in [the Court's] previous cases dealing with Border Patrol traffic-checking operations." *Id.* at 555 (internal citations omitted).

Thus, "[i]n *United States v. Martinez-Fuerte*[,] the Supreme Court upheld the constitutionality of immigration checkpoints [where agents routinely conduct] suspicionless 'stops for brief questioning   . . . at permanent checkpoints.'" *United States v. Machuca-Barrera*, 261 F.3d 425, 431 (5th Cir. 2001) (quoting *Martinez-Fuerte*, 428 U.S. at 566). The Supreme Court "explicitly limited its holding to stops and questioning to enforce the immigration laws." *Id.* Thus, "[a]s we have stated, the Constitution is violated when the detention extends beyond the valid reason for the initial stop." *Id.* at 432. Accordingly, "[i]t is the length of the detention, not the questions asked, that makes a specific stop unreasonable. . . ." *Id.*

No. 09-40779

In this particular instance, Agent Garcia questioned Clayton regarding his immigration status for approximately 45 to 90 seconds. The district court concluded that Agent Garcia's questioning for this length of time did not amount to an unconstitutional search and seizure, and Clayton does not appeal this portion of the district court's ruling. Thus, we find it important to recognize that it was during this 45 to 90 second encounter that Verzir alerted to Clayton's vehicle. The sequence of events is significant since "border patrol agents [who] wish to employ a drug-sniffing dog at an immigration stop . . . may do so only if it does not lengthen the stop beyond the time necessary to verify the immigration status of the vehicle's passengers." *United States v. Garcia-Garcia*, 319 F.3d 726, 730 (5th Cir. 2003). In the present case, however, no party disputes that Verzir's initial sniff and alert to Clayton's vehicle was well-within the length of time necessary to verify Clayton's immigration status. Likewise, Clayton does not dispute the district court's determination that a canine alert to a vehicle provides probable cause to search that vehicle. *See United States v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995) ("The fact that the dog alerted provided probable cause to search."); *see also United States v. Dovali-Avila*, 895 F.2d 206, 207 (5th Cir. 1990) ("[A] 'dog sniff' does not constitute a search . . . and . . . a 'dog alert' is sufficient to create probable cause to conduct a warrantless vehicle search.").

Instead, Clayton appeals the district court's factual conclusion that Agent Osborne's canine, Verzir, actually alerted to Clayton's vehicle. In support of his argument, Clayton submitted David Kroyer's affidavit to the district court–highlighting what Kroyer articulates as the difference between "mere interest and an alert or indication." According to Kroyer, the "dog's claimed 'alert' in this

6

case does not amount to probable cause." Thus, Clayton avers that the district court's conclusion that Verzir alerted to his vehicle constitutes clear error. In support of this alleged factual distinction, Clayton argues that "[v]arious federal appellate courts have distinguished a dogs [sic] showing of interest with an actual alert."

The three cases Clayton cites from our sister circuits, however, do not support Clayton's proposition that the district court, in this instance, clearly erred when it determined that Verzir alerted to Clayton's vehicle. Although the Sixth Circuit did "acknowledge that [a] dog's 'interest' in [a] bag alone would not constitute probable cause," *United States v. Guzman*, 75 F.3d 1090, 1096 (6th Cir. 1996), the Sixth Circuit did not second guess the police officer's "awareness of the dog's interest in [the Defendant's] bag when determining whether the totality of the circumstances established probable cause to seize [the] defendant[.]" *Id.* Thus, because the *Guzman* Court simply concluded that a dog's interest– when considered in conjunction with the totality of the circumstances– could give rise to probable cause, the *Guzman* Court's decision fails to provide this Court with any specific guidance as to how the Court should evaluate the district court's factual determination that an individual dog's actions do constitute an alert– as opposed to an interest or indication. *See id.* To the extent that Clayton attempts to rely on the Sixth Circuit's decision as support for his contention that the district court clearly erred in concluding that Verzir alerted to his vehicle, such reliance is misplaced.[2]

---

[2] Likewise, Clayton's reliance on both the Eighth Circuit's decision in *United States v. Jacobs*, and the Tenth Circuit's decision in *United States v. Munoz-Nava*, is also misplaced. The Eighth Circuit's decision in *Jacobs* is inapplicable to the present case because in *Jacobs*, the Court was determining whether a police officer's attempts to obtain a warrant by

No. 09-40779

Although Clayton maintains that the district court erred when it determined that Verzir did in fact alert to Clayton's vehicle, this Court's precedent serves to support the district court's adoption of Osborne's testimony regarding his dog's "alert" as both credible and reliable.  Previously, this Court has "determined that . . . evidence that the dog was certified was sufficient proof of his training to make an effective alert." *United States v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003).  That is, in cases where the evidence indicates that a drug dog has been properly trained and certified, we have found "the record to support the district court's finding that the dog's alert was reliable and established probable cause for a search of the vehicle." *Id.*

In the present case, Agent Osborne testified before the district court that he has worked with Verzir since September of 2007– when Agent Osborne first trained with Verzir for six weeks in El Paso, Texas, at the National Canine

---

"underlining [of the word] 'interest' . . . was attempting to mislead the magistrate judge by emphasizing the word in such a fashion as to equate it with the term of art 'alert.'" *United States v. Jacobs*, 986 F.2d 1231, 1234 (8th Cir. 1993).  In the present case, however, we are not reviewing a warrant issued based on a police officer's exaggeration of the fact that his dog showed an "interest" in the Defendant's property, but rather, we are evaluating the district court's factual determination that an individual dog's reaction to a Defendant's vehicle was in fact an alert– as opposed to a mere indication.  Consequently, the Eighth Circuit's decision in *Jacobs* is not presently applicable.  Likewise, the Tenth Circuit's decision in *Munoz-Nava* offers no guidance to our consideration of the present appeal.  In *Munoz-Nava*, the Tenth Circuit reasoned that "absent a full alert, the dog's behavior was not sufficient to support probable cause, but the [dog's] behavior change could be considered in the totality of the circumstances." *United States v. Munoz-Nava*, 524 F.3d 1137, 1145 (10th Cir. 2008).  Thus, in *Munoz-Nava*, the dispute was not whether the dog had in fact alerted, but rather, the dispute was whether the court could find probable cause in circumstances where the drug dog had failed to alert.  We are not presented with a case in which a drug dog has failed to alert.  Instead, we have been presented with a case where the Defendant-Appellant contests the Agent's characterization of his dog's actions as an alert.  Accordingly, the Tenth Circuit's reasoning in *Munoz-Nava* is irrelevant to the present appeal.

No. 09-40779

Facility.  Since that time, he has worked on 46 individual cases where he interpreted Verzir's actions to be an "alert" to illegal narcotics.  Out of those 46 cases, not once has Agent Osborne mistaken Verzir's actions to be an alert, nor has Verzir ever falsely alerted.  Agent Osborne also testified that they continue to train and test Verzir's reliability, as they are both subject to training and testing for one eight-hour block, once every two weeks.

In fact, the record is absolutely devoid of anything that could possibly undermine the credibility of Agent Osborne or the reliability of his canine.  Despite this almost impeccable record, Clayton contends that the district court clearly erred in adopting Agent Osborne's testimony that Verzir alerted because Agent Osborne himself testified that Verzir often "alerts" by sitting near the source of illegal narcotics– and in this particular instance, Verzir did not sit.  Instead, Agent Osborne testified that Verzir pulled Osborne towards Clayton's vehicle and jumped up on it.  Notably, Osborne testified that Verzir:

> didn't go past [Clayton's vehicle] to another vehicle.  He didn't go and try to sniff what was in the cab of the vehicle, along with the driver.  He went past it and stopped there at the center of the truck, worked all underneath it. . . . even when I tried to move him to other areas, he went back to that one spot and worked it as is, I mean, as hard as he could. That to me tells me he's alerting.  His body posture changed. . . .  As I remember it, his mouth closed, his ears went up, he was sniffing all around. . . . His nose was in just about every part of that center of the truck.

According to Clayton, because Osborne testified that Verzir is a "passive indicator" that usually sits to indicate the presence of illegal narcotics, the district court clearly erred when it found that Verzir's actions in this instance constituted an "alert."

9

No. 09-40779

We disagree. The record in this case reveals that Verzir and Osborne have gone through significant training and have an extremely reliable record together. Not once has Osborne mistakenly interpreted Verzir's actions to be an alert. Furthermore, although Verzir did not sit in this instance, Osborne was able to articulate several specific indicators he used, as Verzir's handler, to interpret Verzir's actions to be an "alert." None of the above listed indicators (*i.e.*, Verzir's jumping on the vehicle, the elevation of his ears, his pulling Osborne to the vehicle, etc.), are objectively unreasonable. Instead, the record only provides support for the district court's conclusion that Agent Osborne properly interpreted his dog's actions to be an "alert." Although Verzir did not passively indicate or sit in this instance, our Fourth Amendment jurisprudence does not require drug dogs to abide by a specific and consistent code in signaling their sniffing of drugs to their handlers. So long as officers are able to articulate specific, reasonable examples of the dog's behavior that signaled the presence of illegal narcotics, this Court will not engage itself in the evaluation of whether that dog should have used alternative means to indicate the presence of the drugs.

Accordingly, we cannot conclude that the district court clearly erred when it concluded that Verzir did in fact alert to the illegal narcotics in Clayton's vehicle, and as a result, we affirm the district court's denial of Clayton's motion to suppress.

IV.   CONCLUSION

For the aforementioned reasons, we AFFIRM the district court's denial of the Defendant-Appellant's motion to suppress.