# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————

No. 17-11253

————

United States Court of Appeals
Fifth Circuit

**FILED**
September 13, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

RUSSELL TIM SHEN,

Defendant–Appellant

————————————————

Cons. w/ No. 17-11260

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

ANDRE JORGE HERNANDEZ,

Defendant–Appellant

————————————

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 2:16-CR-70-1
USDC No. 2:16-CR-70-2

————————————

No. 17-11253 c/w 17-11260

Before JONES, BARKSDALE, and WILLETT, Circuit Judges.

PER CURIAM:*

A police officer stopped Russell Shen and Andre Jorge Hernandez for following a truck too closely in the rain. After speaking with them for about ten minutes, the officer suspected the men were up to more than traffic violations. A quick walk around the vehicle with a canine proved the officer correct—Shen and Hernandez were trafficking 71 pounds of marijuana.

Both men pleaded guilty. Both men also filed separate but substantially similar motions to suppress all evidence, arguing (1) their traffic stop was unreasonably prolonged and (2) the officer's canine never properly alerted to the presence of narcotics. The district court denied the two motions in one order that was as thorough as it was correct.

We AFFIRM.

## I. BACKGROUND

### A.     Factual

Officer Coy Teichelman conducted a traffic stop involving Defendants Russell Shen and Andre Jorge Hernandez because they were following too closely to a semi-trailer truck. Shen was driving and Hernandez was a passenger. Teichelman suspected wrongdoing soon after greeting Shen because, among other things, Shen was acting nervously and his hands were shaky as he thumbed through the rental-car paperwork. And when Teichelman asked for a copy of the rental-car agreement, Shen provided him an XM satellite radio channel menu.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-11253 c/w 17-11260

Based on this, Teichelman informed Shen he would issue a warning for the traffic violation but asked Shen to join him in the patrol car as he completed the paperwork.

In the patrol car, Teichelman noticed the rental car was in Hernandez's name and was reserved for a one-way trip. Teichelman testified that the road on which he stopped the Defendants had a "pretty high" rate of drug trafficking. When Teichelman asked Shen about the itinerary and nature of his and Hernandez's trip, Shen responded by shaking his head and stating, "Not even gonna bother with that," and "I can't deal with it." Shen then showed Teichelman a federal badge—leading Teichelman to wonder if the two men were engaged in a controlled delivery—but then clarified that Hernandez was not an agent and that their trip to Denver and the drive to Miami were for pleasure. Hernandez, however, told Teichelman that the men visited Denver so Shen could undergo chemotherapy.

Based on these and other factors, Teichelman suspected criminal activity and asked Shen for consent to search the vehicle. Shen declined. Teichelman then walked his canine, Alis, around the vehicle and explained to Shen that if the canine alerted on the car, he would have probable cause to search it. When Teichelman conducted the walk-around, approximately 14 minutes had passed since the Defendants were stopped.

Teichelman's canine was a "passive" alert dog trained to alert by sitting and staring, or, as Teichelman testified, "just stand[ing] and . . . maybe kind of even squat[ting], but she would be focused and staring at the area of the narcotics or the odor where she's detecting the narcotics." When Teichelman walked his canine around the car, she did not sit. But she exhibited other behavior Teichelman previously observed her exhibit when detecting narcotics in a controlled environment. Based on that behavior, Teichelman concluded there was probable cause to search the vehicle.

3

No. 17-11253 c/w 17-11260

Upon searching the vehicle, Teichelman and two other uniformed police officers found approximately 71 pounds of marijuana.

**B.     Procedural**

Shen and Russell were charged with conspiracy to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846, and distribution and possession with intent to distribute marijuana, and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) and 18 U.S.C. § 2. Both men filed nearly identical, nearly boilerplate motions to suppress all evidence and statements, which the district court denied in one order. Both men pleaded guilty to one count of distribution and possession with intent to distribute marijuana and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) and 18 U.S.C. § 2.

The district court entered judgment on Shen's and Hernandez's guilty pleas. The defendants timely appealed.

## II.  JURISDICTION AND STANDARD OF REVIEW

**A.     Statement of Jurisdiction**

This is a consolidated appeal from final judgments in a criminal case. The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291.

**B.     Standard of Review**

"In reviewing a motion to suppress, this court reviews the district court's legal determinations de novo and its factual findings for clear error." *United States v. Boche-Perez*, 755 F.3d 327, 333 (5th Cir. 2014) (citation omitted). We view the evidence in the light most favorable to the prevailing party—here, the Government. *Id.* (citation omitted). We may affirm on any basis supported by the record. *Id.* (citing *United States v. Ibarra–Sanchez*, 199 F.3d 753, 758 (5th Cir. 1999)).

### III. DISCUSSION

**A.    The Length of the Traffic Stop**

Shen and Hernandez first argue that, under *Terry v. Ohio*, 392 U.S. 1, 20 (1968), their 15-minute traffic stop was unreasonably prolonged in relation to its initial justification. This argument is unpersuasive.

A traffic stop is a *Terry* stop subject to Fourth Amendment scrutiny. *See Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). We generally evaluate the reasonableness of a *Terry* stop using a two-part inquiry. We "first examine whether the officer's action was justified at its inception, and then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). The Defendants' contention that their stop was unreasonably prolonged implicates the second prong of this analysis.

If an officer develops reasonable suspicion of criminal activity during a traffic stop, "he may further detain [the] occupants [of the vehicle] for a reasonable time while appropriately attempting to dispel this reasonable suspicion." *United States v. Andres*, 703 F.3d 828, 833 (5th Cir. 2013) (quoting *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010)). The officer's reasonable-suspicion determination is "based on the totality of the circumstances and the . . . knowledge and experience of the officer." *United States v. Estrada*, 459 F.3d 627, 631–32 (5th Cir. 2006).

When Teichelman handed Shen a traffic warning, only ten minutes had passed. The district court identified at least seven factors that had generated reasonable suspicion by that time:

1.  Shen and Hernandez were driving a rental vehicle under a one-way rental agreement.
2.  They paid more than $1,800 for the rental.
3.  They did not care if the rental car was returned late.

No. 17-11253 c/w 17-11260

4. They had flown to Colorado and were driving a rental car on their return trip, and it is more expensive to drive a rental car at this cost than to fly.
5. It was essentially Shen's trip, but the car was rented in Hernandez's name.
6. They were making a questionable quick stop in Houston before traveling to Florida.
7. Shen identified himself as a federal officer and stated he was picking "stuff" up, but Teichelman had worked with the DEA and had done controlled deliveries, and there were always multiple officers around when he did them.

Add to this list the facts that the men were found violating a traffic law on a highway known for high drug trafficking and that Shen provided Teichelman an XM satellite radio channel menu instead of the rental agreement.

It is important to remember the Government need not demonstrate that any *one* factor discussed above could alone justify Teichelman's reasonable suspicion. Instead, "[r]easonableness . . . is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). And under the totality of the circumstances, it was reasonable for Teichelman to suspect something more than a traffic violation was afoot.

Because Teichelman "develop[ed] reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he [was entitled to] further detain [Shen and Hernandez] for a reasonable time while appropriately attempting to dispel this reasonable suspicion." *Pack*, 612 F.3d at 350. We believe that ten minutes to issue a traffic warning and ask questions constitutes "a reasonable time." *See United States v. Villafranco-Elizondo*, 897 F.3d 635, 644 (5th Cir. 2018) (finding traffic stop reasonable where officer did not run a check on driver's license and registration until 11 minutes into the stop). We also believe questioning the men about their trip and plans was an "appropriate[] attempt[] to dispel . . . suspicion." *Pack*, 612 F.3d at 350; *see also Brigham*, 382 F.3d at 508 ("An officer may also

ask about the purpose and itinerary of a driver's trip during the traffic stop."). And given the answers to his questions and the Defendants' behavior, it was reasonable for Teichelman to take an additional five minutes to lead his canine, Alis, around the vehicle for an open-air drug sniff.

## B.     The Dog That Didn't Bark

Shen and Hernandez next argue that Teichelman lacked probable cause to search their vehicle because Alis did not fully alert to the presence of narcotics.

When dealing with a probable-cause challenge to a drug dog's alert, "[t]he question—similar to every inquiry into probable cause—is whether all the facts surrounding [the] dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Florida v. Harris*, 133 S. Ct. 1050, 1058 (2013). "A sniff is up to snuff when it meets that test." *Id.*

Shen and Hernandez claim Teichelman lacked probable cause to search the vehicle because Alis did not fully alert. Specifically, Defendants point out that Alis was trained to sit when alerting to narcotics. But footage from Teichelman's dashcam reveals that Alis never sat.

As the district court noted, there is no Fifth Circuit law demanding that a drug dog come to a full and final alert before probable cause exists. Nor does the Supreme Court's instruction that we weigh "all the facts surrounding [the] dog's alert, viewed through the lens of common sense," imply such a rigid standard. *See id.* at 1058. In that vein, our court has held in an unpublished decision that a dog provided probable cause even though it did not sit as trained to do when alerting to narcotics. *See United States v. Clayton*, 374 F. App'x 497, 502 (5th Cir. 2010) (per curiam) ("[A]lthough [the dog] did not sit in this instance, [the officer] was able to articulate several specific indicators he used, as [the dog's] handler, to interpret [the dog's] actions to be an 'alert.'"); *cf.*

*Villafranco-Elizondo*, 897 F.3d at 644 ("[W]e have previously rejected the notion that the failure of a drug dog to alert *deprives* officers of existing probable cause. We apply that principle here." (emphasis added)).

Although we are not bound by an unpublished decision, we find the reasoning in *Clayton* persuasive and consistent with the decisions of several of our sister circuits. *See, e.g.*, *United States v. Holleman*, 743 F.3d 1152, 1156–57 (8th Cir. 2014) ("[W]e are not concerned about [the dog's] failure to give a full indication."); *United States v. Thomas*, 726 F.3d 1086, 1098 (9th Cir. 2013) ("Evidence from a trained and reliable handler about alert behavior he recognized in his dog can be the basis for probable cause. Whether a particular dog displays enough signaling behavior will depend on the facts and circumstances of each case."); *United States v. Parada*, 577 F.3d 1275, 1281–82 (10th Cir. 2009) ("We decline to adopt the stricter rule urged by [the defendant], which would require the dog to give a final indication before probable cause is established.").

All the facts surrounding Alis's alert, viewed through the lens of common sense, would lead a reasonably prudent person to think a search of Shen and Hernandez's rental vehicle would reveal contraband. The district court listed several of these facts:

- Teichelman had been working with Alis for about two years.
- Alis was certified by the National Narcotic Detector Dog Association and the National Police Canine Association.
- Alis's annual certification, with blind testing, establishes that she reliably detects drugs in a controlled environment.
- According to Teichelman's uncontradicted testimony, every case of a false-positive response by Alis in the field was explained by the presence of recognizable narcotics odors, even if no drugs were ultimately found.

Plus, as Teichelman took her around the vehicle, Alis showed signs of interest, such as an increased breathing rate, wagging her tail, and sniffing more air

through her nose. At one point, Alis paused, sniffed the car's door seam heavily, and stared at the passenger door seam for about one second.

No, Alis never sat down. But the Defendants are barking up the wrong tree. Teichelman testified Alis never sits in water, and during the open-air sniff, the rental car was parked in a puddle of water. *See Holleman*, 743 F.3d at 1156–57 (noting the "officer explained the dog's failure to give a full 'indication'"). More importantly, Teichelman testified that Alis was acting as she has in the past when identifying a narcotic odor. When counsel asked Teichelman to clarify that he has previously seen Alis "respond in that way when detecting narcotics," Teichelman answered affirmatively.

Viewing "all of the evidence introduced at [the] suppression hearing in the light most favorable to . . . the Government," *United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002), and considering Teichelman's two years of experience with Alis, there was probable cause to believe the vehicle contained contraband.

## C.    Hernandez's Window Argument

Hernandez lastly claims Teichelman put his arm into the vehicle's open, driver-side window, which caused Alis to stick her head into the vehicle. Hernandez cites several out-of-circuit cases for the proposition that it is unconstitutional for a dog's nose to break the plane of a vehicle's open window *before* probable cause exists.

The Government says this argument is subject to plain-error review because Hernandez did not raise it below. *United States v. De Jesus-Batres*, 410 F.3d 154, 158 (5th Cir. 2005) ("If a particular suppression argument is not made to the district court, review is for plain error."). That is questionable. Hernandez did not raise this argument in his motion to suppress, but his counsel asked an expert witness during the suppression hearing whether an officer may stick his hand inside a vehicle while handling a drug dog. And

No. 17-11253 c/w 17-11260

Shen's counsel, at the same suppression hearing, questioned Teichelman at length about whether he directed Alis to enter the driver-side window. Indeed, Shen's counsel asked Teichelman whether he was "supposed to be searching inside of the vehicle." After the joint suppression hearing, the district court ruled on the Defendants' motions to suppress jointly.

But we need not grapple with the appropriate standard of review. Even assuming Hernandez properly preserved his argument, it is unavailing under the resulting standard—which is more forgiving than plain-error review. *See, e.g.*, *United States v. Maldonado*, 241 F. App'x 198, 201 (5th Cir. 2007) ("When error is properly preserved, a suppression ruling is reviewed *de novo*; factual findings, for clear error." (citing *United States v. Castro*, 166 F.3d 728, 731 (5th Cir. 1999))).

Hernandez correctly summarizes the law: The Fourth Amendment comes into play when an officer facilitates, encourages, or prompts a drug dog to enter a vehicle. Hernandez argues Teichelman placed his arm into the driver-side window and commanded Alis to get up on that open window, thereby facilitating, encouraging, and prompting Alis to enter it. But Hernandez points to no evidence that Teichelman *directed* Alis to enter the window.

To the contrary, the district court found that Teichelman's hand movements were part of the high and low passes Teichelman described as standard procedure. The court also explicitly found Teichelman's standard procedures "did not improperly cue Alis." These factual findings are not clearly erroneous. Viewing these findings in the light most favorable to the Government, we believe Hernandez has not shown that Teichelman's use of a standard "high and low" pass procedure became an unlawful search because the window was down and Alis entered it. *Cf. United States v. Lyons*, 486 F.3d 367, 373 (8th Cir. 2007) ("Appellants do not cite to any authority that holds

that the officers had the affirmative duty to close the windows in preparation for the dog sniff, and we find none."); *United States v. Stone*, 866 F.2d 359, 364 (10th Cir. 1989) (noting "the police remained within the range of activities they may permissibly engage in when they have reasonable suspicion to believe an automobile contains narcotics" in a case where there was no evidence that "the police asked [the defendant] to open the hatchback so the dog could jump in" or that "the police handler encouraged the dog to jump in the car").

## CONCLUSION

For these reasons, we AFFIRM the judgment of the district court.