

FILED

Jun 21 2023, 8:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Megan Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew T. McKinney, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | June 21, 2023 <br><br> Court of Appeals Case No. 22A-CR-2535 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Sheila A. Carlisle, Judge <br><br> The Honorable Matthew E. Symons, Magistrate <br><br> Trial Court Cause No. 49D29-2202-F2-4152 |

**Opinion by Judge Tavitas**
Judges Vaidik and Foley concur.

**Tavitas, Judge.**

## Case Summary

Matthew McKinney was convicted of possession of methamphetamine, a Level 4 felony; unlawful possession of a syringe, a Level 6 felony; and driving while suspended, a Class A misdemeanor. McKinney appeals and claims that evidence obtained by a canine sniff and subsequent search of his vehicle violated his rights under both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. We conclude that McKinney's constitutional rights were not violated and, accordingly, affirm.

## Issues

McKinney raises two issues, which we restate as:

I.   Whether the canine sniff and subsequent search of McKinney's vehicle violated McKinney's rights under the Fourth Amendment of the United States Constitution.

II.  Whether the canine sniff and subsequent search of McKinney's vehicle violated McKinney's rights under Article 1, Section 11 of the Indiana Constitution.

## Facts

On February 9, 2022, Trooper Lim Chol of the Indiana State Police was patrolling on Interstate 65 in Indianapolis when he observed a truck that had been spray painted with gold paint. The truck—later determined to be driven by McKinney—appeared to be traveling at the speed limit as other vehicles

going over the speed limit passed it. Trooper Chol noticed that, when McKinney applied the brakes, the rear brake light lit up with an amber or white color instead of the statutorily-required red color.[1] Later examination revealed that the plastic brake light cover had been broken and that the light had been covered with red colored tape. Trooper Chol followed the truck in his patrol car and observed the truck drive across the "gore point line"[2] as it exited the highway. Tr. Vol. II p. 189. This too was a traffic infraction. Trooper Chol activated his emergency lights and pulled the truck over.

[4] Trooper Chol approached the truck and observed McKinney in the driver's seat and Tara Strahl in the passenger's seat. Strahl had an Indiana Identification Card, but no driver's license. Trooper Chol then ran the occupants' information through dispatch and learned that McKinney's driver's license was suspended and that Strahl's driving privileges were suspended for life for being an habitual traffic violator.[3]

---

[1] Indiana Code Section 9-19-6-17(a) provides:

> A motor vehicle may be equipped, and when required under this chapter must be equipped, with a stop lamp or lamps on the rear of the vehicle that:
>
> > (1) displays only a red light, visible from a distance of not less than one hundred (100) feet to the rear in normal sunlight;
> >
> > (2) will be actuated upon application of the service (foot) brake; and
> >
> > (3) may be incorporated with at least one (1) other rear lamp.

[2] Trooper Chol testified that the gore point line is "the triangle line that divides the exit ramp from the main" road. *Id.*

[3] Dispatch also told Trooper Chol that someone named "Matthew McKinney" had an outstanding warrant issued in Jasper County. Trooper Chol later learned that the warrant was no longer active.

[5] Because neither occupant of the truck could legally drive the truck, Trooper Chol knew that he would have to impound the vehicle. Trooper Chol then requested a canine officer to act as backup. In response to this call, Trooper Susan Rinschler arrived on the scene with her police dog, Maverick. Maverick is trained to detect the odor of marijuana, methamphetamine, heroin, powder and crack cocaine, and ecstasy. The troopers discussed the situation, and Trooper Chol returned to the truck. McKinney informed Trooper Chol that he was wanted on two warrants in Florida but that Florida had declined to extradite him. Trooper Chol instructed McKinney and Strahl to exit the truck and stand with him by his patrol car while Trooper Rinschler proceeded to have Maverick sniff around the truck. Before the sniff started, Trooper Rinschler asked McKinney if there was any contraband in the truck, and McKinney denied having any contraband.

[6] Trooper Rinschler retrieved Maverick from her vehicle and directed him toward McKinney's truck. Maverick ran along the passenger's side of the truck and focused on the seam between the door and the front quarter panel. Maverick sniffed the rest of the truck on the passenger's side, then again focused on the seam between the door and panel. He then jumped up at the seam, which Trooper Rinschler testified meant that Maverick was searching for the source of the odor he detected. Maverick then stared at Trooper Rinschler and, in Trooper Rinschler's estimation, attempted to sit but remained standing. Trooper Rinschler stated that, because of the snow and slush on the road, Maverick likely did not want to do a full sit and get wet, so he did a "half sit,"

Tr. Vol. III p. 16, or a "good try" at sitting. Tr. Vol. II p. 45. At that point, Trooper Rinschler directed Maverick to the driver's side of the truck. Maverick again focused on the seam between the driver's side door and the front quarter panel and jumped up at that location. Maverick then stared at Trooper Rinschler but did not sit down. Trooper Rinschler told Maverick that he was a "good boy," gave him his reward ball, and put him back in her patrol car. Ex. Vol. II State's Ex. 4 at 09:36.

[7] Trooper Rinschler gave Trooper Chol a thumbs up gesture and informed him that Maverick had alerted to something in the truck. Trooper Rinschler searched the truck while Trooper Chol remained at his vehicle with McKinney and Strahl. Inside the truck, Trooper Rinschler found: a smoking device with what appeared to be methamphetamine residue on it; a baseball cap with a syringe and needle containing an unknown substance; a small black bag holding individual packages of suspected drugs and drug paraphernalia; digital scales with residue; individual packages of what appeared to be mushrooms; a green bag containing men's underwear and syringes; and a bag of a crystal substance that was later determined to be over fourteen grams of methamphetamine.

[8] On February 14, 2022, the State charged McKinney with Count I: dealing in methamphetamine, a Level 2 felony; Count II: possession of methamphetamine, a Level 3 felony;[4] Count III: dealing in marijuana, a Level 6

---

[4] The State charged Count II as a Level 4 felony elevated to a Level 3 felony based on McKinney's prior conviction for dealing in cocaine.

felony; Count IV: possession of a controlled substance, a Level 6 felony; Count V: unlawful possession of a syringe, a Level 6 felony; and Count VI: driving while suspended, a Class A misdemeanor. The State subsequently amended the charging information to allege that McKinney was an habitual offender.

[9] On March 22, 2022, McKinney moved to suppress the evidence found during the search of his truck, which McKinney claimed was conducted without probable cause and therefore violated his rights under both the Fourth Amendment and Article 1, Section 11. The trial court held a suppression hearing on April 12, 2022, and issued an order denying the motion to suppress on April 19, 2022.

[10] Before trial, the State moved to dismiss Counts III and IV, which the trial court granted. A jury trial was held on August 18, 2022. McKinney objected to the introduction of the evidence obtained as a result of the search of his truck, and the trial court overruled his objections. The jury found McKinney not guilty on Count I, but guilty on Counts II, V, and VI. The State, however, declined to proceed on the elevation of Count II to a Level 3 felony, resulting in the jury finding McKinney guilty on Count II as a Level 4 felony. At a hearing on September 27, 2022, the trial court sentenced McKinney to seven years in the Department of Correction on Count II, and concurrent sentences of one year on Counts V and VI. McKinney now appeals.

# Discussion and Decision

## *Standard of Review*

[11] McKinney first argues that the State failed to establish probable cause that would justify the search of his truck and that the evidence found in the truck should have been suppressed. Because this case proceeded to trial where McKinney renewed his objection to the admission of that evidence, we review the trial court's ruling on its admissibility, not the denial of the motion to suppress. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014) (citing *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013)). A trial court has broad discretion to rule on the admissibility of evidence. *Id.* (citing *Clark*, 994 N.E.2d at 259-60). "We review [the trial court]'s rulings 'for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id.* (quoting *Clark*, 944 N.E.2d at 260). "[W]hen an appellant's challenge to such a ruling is predicated on an argument that impugns the constitutionality of the search or seizure of the evidence, it raises a question of law, and we consider that question de novo." *Id*. (citing *Kelly v. State,* 997 N.E.2d 1045, 1050 (Ind. 2013)).

## *I. Fourth Amendment*

[12] The Fourth Amendment to the United States Constitution provides:

> The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable

cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

[13]     "If a search is conducted without a warrant, the State bears the burden to show that one of the well-delineated exceptions to the warrant requirement applies." *Chauncy v. State*, 204 N.E.3d 311, 315 (Ind. Ct. App. 2023) (citing *Farris v. State*, 144 N.E.3d 814, 819-20 (Ind. Ct. App. 2020)).  One such exception is the automobile exception, which allows police to search a vehicle without obtaining a warrant if they have probable cause to believe evidence of a crime will be found there.  *State v. Hobbs*, 933 N.E.2d 1281 (Ind. 2010).  "It is well settled that a dog sniff is not a search protected by the Fourth Amendment or Article 1, Section 11 of the Indiana Constitution." *Tinker v. State*, 129 N.E.3d 251, 255 (Ind. Ct. App. 2019) (citing *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013)), *trans. denied*.  A dog sniff, however, might support probable cause to search a vehicle.  *Hobbs*, 933 N.E.2d at 1286.

[14]     McKinney argues that the State failed to establish that Maverick's behavior reliably demonstrated that he detected the odor of one of the various illicit drugs he is trained to detect and that the police therefore did not have probable cause to search McKinney's truck.[5]  Our Supreme Court has stated that

---

[5]  Surprisingly, the State did not argue below that the drugs and paraphernalia found in McKinney's truck would inevitably have been discovered during an inventory search of the truck.  *See Clark*, 994 N.E.2d at 272 (explaining that improperly seized evidence need not be excluded if it would have inevitably been obtained

"[p]robable cause is 'not a high bar,' and is cleared when the totality of the circumstances establishes 'a fair probability"—not proof or a prima facie showing—of criminal activity, contraband, or evidence of a crime.'" *Hodges v. State*, 125 N.E.3d 578, 581-82 (Ind. 2019) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014); *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). "In fact, innocent activity will often supply a basis for showing probable cause." *Id.* (citing *Gates*, 462 U.S. at 243 n.13; *McGrath v. State*, 95 N.E.3d 522, 529 (Ind. 2018)).

[15] The United States Supreme Court explained the probable cause analysis as follows:

> A police officer has probable cause to conduct a search when the facts available to [him] would warrant a [person] of reasonable caution in the belief that contraband or evidence of a crime is present. The test for probable cause is not reducible to precise definition or quantification. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision. All we have required is the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act.

> In evaluating whether the State has met this practical and common-sensical standard, we have consistently looked to the totality of the circumstances. We [have] lamented the development of a list of inflexible, independent requirements applicable in every case. Probable cause . . . is a fluid concept— turning on the assessment of probabilities in particular factual

---

by proper means) (citing *Nix v. Williams*, 467 U.S. 431, 443-44 (1984)). The State, accordingly, does not argue inevitable discovery on appeal.

contexts—not readily, or even usefully, reduced to a neat set of legal rules.

*Florida v. Harris*, 568 U.S. 237, 243-44 (2013) (citations and internal quotations omitted).

[16] As for the use of drug-sniffing dogs to establish probable cause, the Court in *Harris* rejected the "strict evidentiary checklist" adopted by the Florida Supreme Court in that case; instead, the *Harris* Court held:

> [A] probable-cause hearing focusing on a dog's alert should proceed much like any other. The court should allow the parties to make their best case, consistent with the usual rules of criminal procedure. And the court should then evaluate the proffered evidence to decide what all the circumstances demonstrate. **If the State has produced proof from controlled settings that a dog performs reliably in detecting drugs, and the defendant has not contested that showing, then the court should find probable cause. If, in contrast, the defendant has challenged the State's case (by disputing the reliability of the dog overall or of a particular alert), then the court should weigh the competing evidence.** In all events, the court should not prescribe, as the Florida Supreme Court did, an inflexible set of evidentiary requirements. **The question—similar to every inquiry into probable cause—is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test.**

*Id.* at 247-48.

[17] Here, Trooper Rinschler testified to the following facts. Maverick was trained to detect the odor of six different illicit substances and has been with the State Police since 2006. He has been assigned to Trooper Rinschler since June 2016. Maverick was subjected to three months of rigorous training to detect drugs in high-stress environments; and Trooper Rinschler and Maverick participated in sixteen hours of monthly, federally-mandated training. In addition to this mandated training, Maverick and Trooper Rinschler participated in many other trainings, which included ten trainings in the two years prior to the encounter with McKinney. Maverick's training included both single-blind and double-blind testing. He has been certified annually by an international dog certification agency. In approximately ninety percent of cases in which Maverick has indicated a positive response for the odor of drugs, either drugs were found or the occupant explained the reason for the smell of drugs in the vehicle. Thus, roughly only ten percent of Maverick's alerts were not substantiated by the presence of drugs or the recent presence of drugs.

[18] "[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Harris*, 568 U.S. at 247. "If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Id*. at 247-48. Accordingly, the State here produced "proof from controlled settings" that Maverick was reliable in detecting drugs. *Id.* at 248.

[19] Nevertheless, McKinney argues that Maverick failed to display any objective behavior that would indicate that he detected the presence of drugs. We disagree. Trooper Rinschler's bodycam video shows that she retrieved Maverick from her patrol car and gave him his reward ball, which Maverick is conditioned to desire and with which he is sometimes rewarded if he finds drugs. Maverick first jumped and placed his front paws on the side of the patrol car and focused on the ball that Trooper Rinschler had placed on the trunk. Trooper Rinschler then allowed Maverick to bite down on the ball as she carried the ball toward McKinney's truck. There, she ordered Maverick to release the ball and, once he did, Trooper Rinschler pretended to throw the ball in the direction of the truck and instructed him to smell the truck. Maverick sniffed along the passenger side of the truck and showed particular interest in the seam between the passenger door and the front quarter panel; he then sniffed the rear wheel well, then the front wheel well, and returned to the seam. Trooper Rinschler explained that this is known as "bracketing," in which a dog will go back and forth until the source of the odor is located. Tr. Vol. II pp. 38-39.

[20] Maverick then jumped onto the side of the truck by the seam near the passenger door. Maverick briefly lowered his back legs, which Trooper Rinschler described as a "half sit," and a "good try" at sitting down. Tr. Vol. II p. 45; Tr. Vol. III p. 16; *see also* Ex. Vol. II, State's Ex. 3 at 09:09–09:12. Trooper Rinschler then directed Maverick to the driver's side of the truck, where he again sniffed at the area of the seam between the driver's door and the front

quarter panel, briefly jumped up to sniff the around the outside mirror, and then again briefly lowered his back legs.  At this point, Trooper Rinschler told Maverick he was a "good boy" and gave him the reward ball.  Ex. Vol. II, State's Ex. 3 at 09:31.

[21]  McKinney argues that Maverick did not give a final alert response to the presence of drugs by sitting as he was trained to do.  McKinney claims that the behaviors described by Trooper Rinschler—quick movement, increased breathing, tail wagging, ear movements, and the attempt to sit down—were not sufficient to show that Maverick detected the presence of drugs.  We disagree.

[22]  The trial court heard evidence that Maverick usually had a passive final alert response, such as sitting or freezing, but that a final response is merely one indication that a dog has detected drugs.  Other indications that Maverick had detected drugs were provided as follows by Trooper Rinschler:

> [I]t's how we know from our training and experience what the dogs are doing . . . they don't technically have to do a final response for us to be like oh, there's an odor.  The handler should've already known that way prior to a dog sitting or pointing just from what they've been doing in their behavior prior to that.

Tr. Vol. III p. 8.  Moreover, Trooper Rinschler testified that Maverick did, in fact, attempt to sit, but "probably wasn't going to sit his butt down on [the] slush" on the roadway that day.  Tr. Vol. II p. 45.  Trooper Rinschler's testimony shows that she was trained to determine, based on Maverick's behavior, when Maverick had detected the odor of drugs.  The fact that

Maverick did not fully sit down as his final response is not dispositive.[6] Maverick's behavior, viewed in the totality of the circumstances, is sufficient to show that there was a fair probability that the police would find contraband in McKinney's truck.

[23] Although we have found no Indiana case directly on point, the facts of this case are similar to those before the court in *United States v. Hollerman*, 743 F.3d 1152 (8th Cir. 2014). In that case, the canine officer explained why his dog might have failed to give a final alert response as trained. *Id*. at 1156-57. The officer testified that his dog could have been overwhelmed by the odor of marijuana, thereby making it difficult for him to pinpoint the source of the odor. *Id*. at 1157. As the dog went along the passenger side of the defendant's truck, he "stop[ped] dead in his tracks and be[gan] to really detail the area between the bed of the truck and the cab of the truck." *Id*. at 1154 (brackets in original). The officer then pulled his dog away from the truck and directed him to sniff another vehicle parked next to the defendant's truck. The dog did not alert to anything or otherwise change his behavior while sniffing the other vehicle. *Id*. The officer then directed his dog to re-sniff the defendant's truck, at which point he "stopped and detailed the same area as the first time." *Id*. The officer then

---

[6] McKinney also claims that Maverick's behavior of jumping on his truck was new, and that this untrained behavior that cannot support a finding of probable cause. But Trooper Rinschler did not testify that this behavior was new. Instead, she testified that she tried to break Maverick of the habit of scratching at cars to avoid damaging them. Even if this behavior was untrained, this does not obviate a finding of probable cause. *See United States v. Pierce*, 622 F.3d 209, 214 (3rd Cir. 2010) (holding that dog's alert to odor of drugs in a car supported a finding of probable cause even though the dog displayed untrained behavior by leaping into a car through an open window).

concluded that his dog was indicating that the defendant's truck, more likely than not, contained contraband. *Id*.

[24] On appeal, the Eighth Circuit held that "'all the facts surrounding [the dog]'s alert[s], viewed through the lens of common sense,' 'would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime.'" *Id*. at 1158 (quoting *Harris*, 568 U.S. at 248). The court determined that the Fourth Amendment did not "require drug dogs to abide by a specific and consistent code in signaling their sniffing of drugs to their handlers." *Id*. at 1156. So long as law enforcement officers are able to "articulate specific, reasonable examples of the dog's behavior that signaled the presence of illegal narcotics, [the] Court will not engage itself in the evaluation of whether that dog should have an alternative means to indicate the presence of drugs." *Id*.

[25] Similarly, in *United States v. Parada*, 577 F.3d 1275, 1281 (10th Cir. 2009), the Tenth Circuit held that the district court did not err when it found that a drug-sniffing dog provided sufficient probable cause to search a vehicle even though the dog did not act in accordance with his usual, trained final response and instead stiffened his body, breathed deeply, and attempted to jump into the window of the suspect's vehicle. Despite evidence from the defendant's expert that the dog did not give a defined final response, the court on appeal deferred to the district court's finding that the dog indicated the presence of contraband. *See id*. ("We decline to adopt the stricter rule urged by [the defendant], which would require the dog to give a final indication before probable cause is established.").

[26]     The Fifth Circuit reached a similar decision in *United States v. Shen*, 749 Fed. Appx. 256 (5th Cir. 2018). There, the canine officer had worked with the drug-sniffing dog for approximately two years, the dog was certified by two independent organizations, the dog's annual testing established that she reliably detected drugs in a controlled environment, and false-positives were explained by the lingering odor of drugs even if no drugs were found. *Id*. at 261. When the dog sniffed the defendant's vehicle, the dog showed signs of interest, including an increased breathing rate, wagging of her tail, and sniffing more air. *Id*. at 261-62. At one point, the dog paused, sniffed the car's door seam heavily, and stared at the passenger door seam for about one second. *Id*. at 262. Although the dog never made a final response by sitting down, the canine officer testified that the dog did not like to sit in water, and it was wet on that day. *Id*. "More importantly, [the canine officer] testified that [the dog] was acting as she has in the past when identifying a narcotic odor." *Id*.

[27]     On appeal, the court concluded "[a]ll the facts surrounding [the dog]'s alert, viewed through the lens of common sense, would lead a reasonably prudent person to think a search of [the defendant]'s vehicle would reveal contraband. *Id*. at 261; *see also Steck v. State*, 197 A.3d 531, 544-45 (Md. Ct. Spec. App. 2018) (upholding trial court's finding of probable cause based on dog-sniff of defendant's vehicle even though the dog did not give a trained, final alert to the presence of drugs; the trial court relied on the canine officer's testimony and the dog's actions, which sufficiently indicated that the dog had detected the odor of drugs).

[28] Here, Trooper Rinschler testified to Maverick's training and reliability. She also testified that, based on her training and extensive experience with Maverick, his behavior while sniffing McKinney's truck indicated to her that Maverick had detected the odor of illicit drugs. Thus, Trooper Rinschler was able to "articulate specific, reasonable examples of the dog's behavior that signaled the presence of illegal narcotic," and we will "not engage . . . in the evaluation of whether [Maverick] should have used an alternative means to indicate the presence of drugs." *Hollerman*, 743 F.3d at 1158.

[29] McKinney cites several federal district court cases and a few federal circuit court cases, which we do not find persuasive. *See Scottsdale Ins. Co. v. Harsco Corp.*, 199 N.E.3d 1210, 1217 (Ind. Ct. App. 2022) (noting that lower federal court decisions may be persuasive but are not binding on state courts). Moreover, most[7] of the cases McKinney cites are distinguishable. *Cf. United States v. Rivas*, 157 F.3d 364, 368 (5th Cir. 1998) (holding that dog's behavior of "casting," which can happen when a dog "maybe feels not a strong alert, but something that temporarily stops him and deters his attention at that point," was insufficient to support a finding of probable cause where the dog's handler did not testify and there was no evidence that "casting" indicated that there was a reasonable suspicion to conduct invasive border search);[8] *United States v.*

---

[7] McKinney cites *United States v. Jacobs*, 986 F.2d 1231 (8th Cir. 1993), in which the court held that a dog sniff did not support a finding of probable cause because the dog only showed interest in and scratched at a package but never gave a full alert. This case, however, was decided decades before the United States Supreme Court's opinion in *Harris*, which rejected rigid rules in favor of a totality-of-the-circumstances approach. We therefore do not find *Jacobs* to be persuasive.

[8] This case too was decided decades before *Harris*.

*Jordan*, 455 F. Supp. 3d 1247, 1253 (D. Utah 2020) (holding that dog's behavior did not support a finding of probable cause where: (1) the dog was walked around the car three times; (2) the officer repeatedly had to draw the dog's attention to certain areas of the car by tapping on the vehicle; (3) the dog's attention was repeatedly drawn away from the vehicle to items on the sidewalk or passing traffic, which required the officer to physically guide the dog back to the suspect vehicle; and (4) the dog never demonstrated any clearly objective behavior showing he had detected a target odor); *United States v. Diaz*, 2018 WL 1697386 (D.S.C. Apr. 6, 2018) (discrediting dog handler's testimony that dog sat down to indicate the presence of drugs where video did not provide a clear footage of the alert and dog handler's testimony about the dog's breathing was insufficient to support a finding of probable cause); *United States v. Heir*, 107 F. Supp. 2d 1088, 1091 (D. Neb. 2000) (finding evidence insufficient to establish probable cause where the only indication that dog detected the odor of drugs was that he sniffed more intensely and there was evidence that the officer may have engaged in behavior that caused the dog to sniff more intensely).

[30]  In contrast, here the State established that Maverick was a certified drug sniffing dog with a history of reliability. Maverick's behavior, even without a full final response of sitting, was sufficient to indicate that he had detected the odors of the illicit drugs he was trained to detect. This is sufficient to establish probable cause to justify the warrantless search of McKinney's truck, and the admission of the evidence found during the search did not violate the Fourth Amendment.

## II. Article 1, Section 11

[31]  McKinney also claims that the search of his truck violated Article 1, Section 11 of the Indiana Constitution. "Although Article 1, Section 11 contains language nearly identical to the Fourth Amendment, Indiana courts interpret Article 1, Section 11 independently." *Parker v. State*, 196 N.E.3d 244, 257 (Ind. Ct. App. 2022) (citing *Hardin v. State*, 148 N.E.3d 932, 942 (Ind. 2020)), *trans. denied*. If a search is challenged under Article 1, Section 11, "the State must show that the challenged police action was reasonable based on the totality of the circumstances." *Id*. (citing *Robinson v. State*, 5 N.E.3d 362, 368 (Ind. 2014)). "'The totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure.'" *Id*. (quoting *Litchfield v. State*, 824 N.E.2d 356, 360 (Ind. 2005). In *Litchfield*, our Supreme Court summarized this evaluation as follows:

> [A]lthough we recognize there may well be other relevant considerations under the circumstances, we have explained reasonableness of a search or seizure as turning on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizens' ordinary activities, and 3) the extent of law enforcement needs.

824 N.E.2d at 361.

[32]  "The *Litchfield* test applies broadly to governmental searches and seizures: 'its application is comprehensive.'" *Parker*, 196 N.E.3d at 258 (quoting *Watkins v.*

*State*, 85 N.E.3d 597, 600 (Ind. 2017)). Applying these factors to the facts here leads us to conclude that the search of McKinney's truck was reasonable under the totality of the circumstances.

[33] The degree of concern, suspicion, or knowledge that a violation had occurred was strong. As for the initial traffic stop of McKinney's truck, Trooper Chol testified that he observed two separate traffic violations, either of which gave rise to probable cause to stop the vehicle. Additionally, the dog sniff provided probable cause for the search of the vehicle; the dog-sniff itself was not a search. *Tinker*, 129 N.E.3d at 255 (citing *Austin*, 997 N.E.2d at 1034). The dog sniff, moreover, indicated the presence of illicit drugs inside the truck. McKinney's arguments to the contrary merely rehash his Fourth Amendment argument that Maverick's behavior was insufficiently objective to support a finding of probable cause. For the reasons set forth above in our Fourth Amendment analysis, we disagree. McKinney's arguments that Maverick was unreliable due to the weather and merely excited about his reward ball, or that Trooper Rinschler's bias influenced Maverick's behavior are merely a request that we reweigh the evidence, which we will not do.

[34] The degree of intrusion that the search or seizure imposed on McKinney's ordinary activities was relatively low. The dog sniff itself was, as noted above, not a search and consisted of a minimal intrusion on McKinney's ordinary activities. *See Austin*, 997 N.E.2d at 1036 (holding that dog sniff of vehicle was "minimal" where the sniff occurred during valid traffic stop and occurred shortly after the vehicle was stopped); *Crabtree v. State*, 199 N.E.3d 410, 416

(Ind. Ct. App. 2022) (noting that dog sniff of door of hotel room was minimally intrusive where it occurred in the outdoor walkway of a hotel). Neither McKinney nor his passenger were able to legally drive the truck, and the truck was going to be impounded. Thus, the dog sniff did not interfere with his further use of the vehicle. Based on the dog sniff, the police did search the interior of his truck. But the search was not overly long, and McKinney was lawfully detained based on his traffic violations. Thus, the search did not interrupt McKinney's lawful use of the truck.[9] This factor, therefore, does not weigh against a finding of reasonableness.

[35] Lastly, the extent of law enforcement needs supports a finding that the police conduct was reasonable under the totality of the circumstances. The needs of law enforcement to find evidence of drug activity is obviously high. *See State v. Gibson*, 886 N.E.2d 639, 643 (Ind. Ct. App. 2008) (concluding under a *Litchfield* analysis that the extent of law enforcement needs were high because "the trafficking of illegal drugs [is] frequently associated with violence and no simpler method exists for detection of hidden drugs than a dog sniff"); *see also Austin v. State*, 997 N.E.2d 1027, 1036 (Ind. 2013) (holding that law enforcement needs are great when investigating drug trafficking).

[36] Considering the *Litchfield* factors under the totality of the circumstances, we conclude that the actions of the police here were reasonable and there was no

---

[9] McKinney argues that because the State did not introduce evidence regarding the police procedures for impounding a vehicle, we cannot consider whether the truck would have been subject to an inventory search. The fact nevertheless remains that neither McKinney nor his passenger could legally drive the vehicle.

violation of Article 1, Section 11. The trial court, therefore, did not abuse its discretion by admitting the evidence found in McKinney's truck.

## Conclusion

[37] The dog sniff of McKinney's truck was sufficient to establish probable cause to search the truck. The search, therefore, did not violate McKinney's rights under either the Fourth Amendment or Article 1, Section 11. Because the search was constitutionally sound, the trial court did not abuse its discretion in admitting the items found during the search of McKinney's truck. Accordingly, we affirm McKinney's convictions.

[38] Affirmed.

Vaidik, J., and Foley, J., concur.